1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HENRY HUNTER, personal representative
of the Estate of Carlos Hunter, an
individual and CHARLES A. ISELY, as
Guardian ad Litem for the minor children of
Carlos Hunter,

               Plaintiffs,

    v.

CITY OF VANCOUVER, a Washington
municipality, WASHINGTON STATE
CORRECTIONS, a state agency, UNITED
STATES OF AMERICA, COULTON
PRICE, BRANDEN SCHOOLCRAFT, and
JOHN DOES 1-10,

               Defendants.

CASE NO. 22-5234 RJB

ORDER ON PLAINTIFFS'
MOTION CHALLENGING THE
ATTORNEY GENERAL'S
CERTIFICATION

This matter comes before the Court on Plaintiffs' Motion Challenging the Attorney

General's Certification and to Substitute Individual Defendants Dennis Devlin and Rob "Rees"

Campbell for the United States.  Dkt. 44.  The Court has considered the pleadings filed regarding

the motion and the remaining record.

ORDER ON PLAINTIFFS' MOTION CHALLENGING THE ATTORNEY GENERAL'S CERTIFICATION - 1

1    Originally filed in Clark County, Washington Superior Court on March 18, 2022,

2  Plaintiffs assert that the Defendants committed various state torts in connection with the March

3  7, 2019 officer involved shooting death of Carlos Hunter.  Dkts. 1 and 13.  The Defendants

4  removed the case.  Dkt. 1.  For the reasons provided below, the Plaintiffs' motion challenging the

5  Attorney General's certification and to substitute the individual defendants, Dennis Devlin and

6  Rob "Rees" Campbell for the United States (Dkt. 44) should be denied.

7    **I.    BACKGROUND FACTS AND PROCEDURAL HISTORY**

8    **A.  INTERAGENCY SAFE STREETS TASK FORCE**

9    In 2013, the Federal Bureau of Investigation ("FBI"), the Washington Department of

10  Corrections ("DOC"), and the City of Vancouver, Washington Police Department ("VPD")

11  entered a Memorandum of Understanding ("MOU") as participants in the FBI's Southwest

12  Washington Interagency Gang Enforcement Team, Safe Streets Task Force ("FBI's SSTF" or

13  "SSTF").  Dkt. 29 at 7-32.  This MOU provides that the purpose of the FBI's SSTF is "to

14  identify and target for prosecution criminal enterprise groups responsible for drug trafficking . . .

15  where there is or may be a federal investigative interest."  Dkt. 29 at 7.  It also indicates that the

16  SSTF's purpose is to "enhance the effectiveness of federal/state/local law enforcement

17  resources" and to seek "the most effective investigative/prosecutive avenues by which to convict

18  and incarcerate dangerous offenders."  *Id.* The MOU provides that "[a] determination will be

19  made on a case-by-case basis whether the prosecution of the FBI's SSTF cases will be at the

20  state or federal level.  This determination will be based on the evidence obtained and a

21  consideration of which level of prosecution would be of greatest benefit to the overall objectives

22  of the SSTF."  Dkt. 29 at 12.  SSTF is to conduct investigations that "allow for federal or state

23  prosecution."  *Id*.  While overall the FBI's SSTF management is to be shared among the joining

24

1    agencies, under the MOU, an FBI Supervisor Special Agent supervises the SSTF's operation and

2    an FBI Special Agent may be appointed as the Task Force Coordinator; either of these "shall

3    oversee day-to-day operational and investigative matters pertaining to the SSTF." *Id.* at 8.

4        At the time of the relevant events, the FBI's Special Agent Task Force Coordinator was

5    Russel Ellersick. Dkt. 29 at 3. Ellersick managed the day-to-day operations of the SSTF. *Id.*

6        Defendant Officer Dennis Devlin is employed by the VPD and Defendant Officer Rob

7    "Rees" Campbell is employed by the Washington State Department of Corrections. Dkts. 52-1

8    at 3 and 52-2 at 2. In October of 2018, Officers Devlin and Campbell received a special

9    deputization from the FBI. Dkt. 29 at 36 and 40. In November of 2018, Officers Devlin and

10   Campbell received a special deputization from the U.S. Marshals Service, "SW WA Interagency

11   Gang Enforcement Team." Dkt. 29 at 34 and 38. Additionally, Officer Campbell was a

12   deputized as a Special Deputy with the Clark County Sheriff's Department, authorizing him to

13   perform duties "as a member of the *Safe Streets Task Force . . .*" Dkt. 34-4 at 2-3.

14       At the time of the events in question, Officers Devlin and Campbell were assigned full

15   time to the FBI's SSTF. Dkt. 29 at 3. Non-party VPD Det. Sergeant Spencer Harris was also

16   assigned full time to the SSTF as a supervisor. Dkt. 52-3 at 2-3.

17       On March 4, 2019, Det. Harris, as a "Detective Sergeant assigned to the [FBI's SSTF],"

18   applied for a search warrant of Mr. Hunter's home, car, and person in Clark County, Washington

19   District Court. Dkt. 47 at 2-14. The Search Warrant stated that it was issued on proof by written

20   affidavit by "Vancouver Police Detective Sergeant Spencer Harris, of the Vancouver Police

21   Department." Dkt. 47 at 15.

22       After issuance of the search warrant, an FBI Law Enforcement Operations Order was

23   developed to execute the warrant. Dkt. 29 at 4. It was written by Det. Harris as a member of the

24

1   SSTF.  Dkt. 50.  This order and plan was approved by the FBI Seattle Division executive

2   management chain-of-command up to the Criminal Assistant Special-Agent-in-Charge.  Dkts. 29

3   at 4 and 50 at 2.

4          According to FBI Special Agent Ellersick, who again acted as the SSFT Coordinator,

5   managing the day-to-day operations of the SSTF, Officers Campbell and Devlin were both SSTF

6   officers assigned to execute the "described search warrant Operations Order and in fact complied

7   with the order" on March 7, 2019.  Dkt. 29 at 5.  Det. Sgt. Harris and two FBI agents, including

8   Ellersick, also participated in the operation.  Dkt. 34-5.

9          The FBI Operations Order included additional "NRT Detective[s]," who had not been

10  assigned as of the date of the Order.  Dkt. 50-1, at 9.  "NRT Detectives" are VPD "Neighborhood

11  Response Team" detectives; on the day in question, Defendant VPD Officers Colton Price and

12  Braden Schoolcraft were the assigned VPD "NTR" detectives at the scene.  Dkt. 52-1 at 9.   In

13  addition to drafting the FBI Law Enforcement Operations Order, Harris wrote the VPD

14  Operational Plan, which listed the "requesting unit" as the "Safe Streets Task Force."  Dkt. 34-2

15  at 2.  The VPD Operational Plan indicated that (non-party) Lieutenant Troy Price was the

16  "Incident Commander," and the "Team leader/supervisor" was Det. Sgt. Harris.  Dkt. 34-2 at 5.

17  According to Troy Price (who is now the VPD Assistant Chief), "[w]hen the SSTF requests

18  assistance from the VPD in the form of additional local law enforcement personnel, a VPD

19  proposed operations plan is prepared by the SSTF and submitted to VPD administrators for

20  review/approval."  Dkt. 51, at 3.  He states that is what occurred here – SSTF Task Force Officer

21  Det. Sgt. Harris drafted and submitted a plan that requested assistance from VPD for officer

22  support from officers not on the task force.  *Id.*  Assistant Chief Price indicates that his role in the

23  operation of March 7, 2019 "was to provide review of the operations plan," which he did.  *Id.*

24

He states that "VPD did not have direction – control over the FBI's Special Agents and/or the SSFT [Task Force Officer] members relative to the SSTF's separately planned and submitted FBI operations plan for executing the judicially approved search warrant for Mr. Hunter, his car and residence." Dkt. 51 at 4.

According to the Amended Complaint, on March 7, 2019, the officers engaged in a stake-out of Mr. Hunter's house. Dkt. 13. Seeing Mr. Hunter leave the house by car, the officers followed Mr. Hunter. Dkt. 13 at 6. They stopped him and during the course of the encounter, tased and shot him. *Id.* Mr. Hunter died at the scene. *Id.*

**B. PROCEDURAL HISTORY**

This case was removed from Clark County, Washington Superior Court on April 11, 2022. Dkt. 1. Removal was based on the existence of a federal question under 28 U.S.C. § 1441. *Id.* (The original complaint asserted federal constitutional claims pursuant to 42 U.S.C. § 1983. Dkt. 1.) Plaintiffs filed an Amended Complaint, removing their federal claims on April 25, 2022. Dkt. 13.

On May 23, 2022, the United States filed a "Certification of Scope of Employment for Defendants FBI Safe Streets' Task Force Officers Dennis Devlin and Rob "Rees" Campbell." Dkt. 28. In this pleading, the United States Assistant Attorney General Brian Donovan indicated that Devlin and Campbell were deputized for the FBI's SSTF and certified "on behalf of the Attorney General, and pursuant to §§ 2679(d)(1) and (2), the Federal Tort Claims Act and Westfall Act, that FBI SSTF Officers Dennis Devlin and Rob Rees Campbell were within the scope of their federal appointments at all material times involved in this lawsuit." Dkt. 28. This pleading further provided that the United States should be substituted as the named party Defendant for those individual federal agents and Devlin and Campbell should no longer be

named Defendants in Plaintiffs' First Amended Complaint. *Id.* (*citing* 28 U.S.C. § 2679(d)(1); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995)).

On June 6, 2022, the Plaintiffs' motion to remand the case was denied. Dkt. 30. That order also granted, without prejudice, the United States' motion that it be substituted for Officers Devlin and Campbell. *Id.*

The Plaintiffs now move to challenge the Attorney General's certification that Officers Devlin and Campbell were acting within the scope of their federal employment and move for Officers Devlin and Campbell to be substituted for the United States. Dkt. 44. The United States and the Washington State Department of Corrections oppose the motion; they are joined in their opposition by Defendants City of Vancouver, Officers Colton Price and Branden Schoolcraft. Dkts. 49, 53 and 54. The Plaintiffs filed a reply. Dkt. 61.

Based on the record the Court concludes that the motion is ripe for review and a hearing is not necessary to decide the motion. There are no issues of fact that need to be decided in a hearing. To the extent the Plaintiffs move for a hearing, the motion should be denied.

## II.    DISCUSSION

### A.  THE ATTORNEY GENERAL'S CERTIFICATION UNDER THE WESTFALL ACT

Under the "Westfall Act, a federal employee is immune from suit upon certification of the Attorney General that the employee was acting within the scope of his employment." *Pauly v. U.S. Dep't of Agri.*, 348 F.3d 1143, 1150 (9th Cir. 2003). The Westfall Act further provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such

action or proceeding shall be deemed to be an action or proceeding brought
against the United States under the provisions of this title and all references
thereto, and the United States shall be substituted as the party defendant. This
certification of the Attorney General shall conclusively establish scope of office
or employment for purposes of removal.

28 U.S.C. § 2679(d)(2). "The Attorney General's decision regarding scope of employment

certification under the Westfall Act is conclusive unless challenged. Accordingly, the party

seeking review bears the burden of presenting evidence and disproving the Attorney General's

decision to grant or deny scope of employment certification by a preponderance of the

evidence." *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017)(*internal quotation marks and

citations omitted*).  In order to rebut the scope of employment certification, a "plaintiff must

allege sufficient facts, that, taken as true, would establish that the defendant's actions exceeded

the scope of his employment." *Id.*

The Westfall Act "does not set out a test to determine whether an employee was acting

within the scope of his office or employment; rather, Congress intended that courts would apply

the principles of respondeat superior of the state in which the alleged tort occurred in analyzing

the scope-of-employment issue." *Saleh* at 888 (*internal quotation marks and citations omitted*).

In Washington, under the doctrine of respondeat superior, employers are vicariously

liable for the torts of employees acting within the scope of their employment. *Anderson v. Soap

Lake Sch. Dist.*, 191 Wn.2d 343, 374 (2018); *Evans v. Tacoma School Dist. No. 10,* 195 Wn.

App. 25, 37 (2016).  The proper inquiry is whether the employee was fulfilling their job

functions at the time they engaged in the injurious conduct.  *Robel v. Roundup Corp.*, 148 Wn.2d

35, 53 (2002).  "An employee's conduct will be outside the scope of employment if it is different

in kind from that authorized, far beyond the authorized time or space limits, or too little actuated

by a purpose to serve the master." *Anderson* at 374.

The Plaintiffs' motion (Dkt. 44) should be denied.  They have failed to present adequate evidence, by a preponderance, disproving the Attorney General's decision to grant scope of employment certification. *Saleh* at 889.

In support of their motion, the Plaintiffs argue that at the time of Mr. Hunter's death, Officers Devlin and Campbell were acting within the course of their employment with VPD  and Clark County (respectively) based on the language of the search warrant.  Dkts. 44 and 61.  They argue that the Search Warrant indicates that it was issued on proof by written affidavit by "Vancouver Police Detective Sergeant Spencer Harris, of the Vancouver Police Department." Plaintiffs, however, fail to acknowledge that Det. Harris applied for the warrant not only as a VPD officer but as a "Detective Sergeant assigned to the [FBI's SSTF]."  Further, while the warrant indicates that it seeks evidence for violation of state law against a person within the state, the plain language of the SSTF's MOU indicates that investigations will be conducted in a joint manner and that the decision of where to prosecute the case (whether in the federal or state courts) would be decided on a case-by-case basis depending on the evidence.  The fact that the warrant states that evidence was sought for state law violations does not mean that Officers Devlin and Campbell were acting outside the scope of their federal appointments on the FBI's SSTF.  The search warrant also directs ". . . any Sheriff, Police Officer, or Peace Officer in Clark County . . . with the necessary and proper assistance, to make a diligent search . . ." Dkt. 47 at 15.  By its plain language, it is not limited to searches exclusively by state or local officers, but expressly contemplates additional "necessary and proper assistance," and so does not exclude federal officers.  The language of the search warrant does not demonstrate that the Officers Devlin and Campbell were acting only pursuant to their authority as VPD or Clark County, Washington officers when they executed the warrant.

1    The Plaintiffs also point to the terms of the VPD's Operational Plan and argue that this

2  plan confirms VPD's operational control and supervisory responsibility over the events on

3  March 7, 2019 rather than the FBI's SSTF.  Dkts. 44 and 61.  The VPD's Operational Plan

4  provides, in general terms, the scope of the operation.  Dkt. 34-2.  While it indicates that VPD

5  will conduct a traffic stop, the VPD Operational Plan states that the "requesting unit" is the FBI's

6  SSTF.  *Id.*  It indicates that the "Chain of Command and Incident Commander" was "Lt. Price"

7  (Dkt. 34-3 at 5), but Price explained that his role was limited to approving the plan.  Further,

8  while the "Team leader / supervisor" is listed as "Sgt. Harris," it is undisputed that he was on the

9  SSTF.  Price explains that the VPD's Operational Plan did not govern the conduct of the FBI

10  agents who were at the scene.  Dkt. 51.  Moreover, there is no evidence the VPD's Operational

11  Plan controlled Officer Campbell – he was not a VPD officer.  There was an FBI Law

12  Enforcement Operations Order in place for all the SSFT members.  Price states that "VPD did

13  not have direction – control over the FBI's Special Agents and/or the SSFT [Task Force Officer]

14  members relative to the SSTF's separately planned and submitted FBI operations plan . . . "  Dkt.

15  51 at 4.  The language of the VPD's Operational Plan  is not sufficient evidence that Officers

16  Devlin and Campbell were acting outside the scope of their federal appointments at the time.

17    Additionally, while the Plaintiffs point to FBI Special Agent Ellersick's testimony that he

18  and his partner were providing surveillance for this operation, that testimony does not

19  demonstrate that FBI or other federally deputized officers had no other role in these events.  FBI

20  Special Agent Ellersick is listed on the FBI Operations Order as the "Alternate  [Case Agent]"

21  (Dkt. 58-1 at 5) (as the Task Force Coordinator, he managed the day-to-day operations of the

22  FBI's SSTF (Dkt. 29 at 3)) to Harris.  Ellersick further testified that Officer Campbell was in an

23  FBI vehicle at the scene.  Dkt. 34-5 at 7.  Ellersick's testimony is not helpful to the Plaintiffs.

24

1    The Plaintiffs point to the grant of federal authority given to Officers Devlin and

2    Campbell, which Plaintiffs contend did not include executing search warrants issued under state

3    law for state criminal violations, to argue that Officers Devlin and Campbell were not acting

4    within the scope of their federal employment.  Dkts. 44 and 61.

5    In October of 2018, Officers Devlin and Campbell received a special deputization from

6    the FBI, authorizing them to "carry firearms . . . execute and serve search warrants . . . issued

7    under the authority of the United States . . . [and] perform such other law enforcement duties as

8    the Attorney General may designate."  Dkt. 29 at 36 and 40.  In November of 2018, Officers

9    Devlin and Campbell received a special deputization from the U.S. Marshals Service, "SW WA

10   Interagency Gang Enforcement Team," authorizing them to "seek and execute arrest and search

11   warrants supporting a federal Task Force under Title 18 authority."  Dkt. 29 at 34 and 38.

12   Additionally, Officer Campbell was a Special Deputy with the Clark County Sheriff's

13   Department, authorizing him to perform duties "as a member of the *Safe Streets Task Force* . . ."

14   Dkt. 34-4 at 2.  These broad grants of authority do not, as Plaintiffs contend, prohibit Officers

15   Devlin and Campbell from executing state search warrants pursuant to their federal deputizations

16   or show that they were not doing so at the time of the relevant events.

17   The Plaintiffs have not shown that Officers Devlin and Campbell's conduct was

18   "different in kind from that authorized, far beyond the authorized time or space limits, or too

19   little actuated by a purpose to serve the [federal government's FBI SSTF]."  *Anderson* at 374.

20   They have not pointed to sufficient facts to rebut the United States' certification that Officers

21   Devlin and Campbell were acting within the scope of their federal appointments.  The United

22   States should remain as the defendant.  *Saleh* at 889.  The Plaintiffs' motion (Dkt. 44) should be

23   denied.

24

**B.  OTHER MATTERS**

The United States filed a motion to seal and a pleading under seal in support of its opposition to the Plaintiff's motion.  Dkt. 55.  The parties later stipulated to the document remaining under seal and for the filing of a "lightly redacted version."  Dkt. 56.  The Court approved the stipulation.  Dkt. 57.  The United States stated good cause for the document (Dkt. 55) to remain under seal.  It has shown that there are "legitimate private or public interests that warrant the relief sought," that "injury may result if the pleadings do not remain under seal," and that a "less restrictive alternative" to the document remaining under seal "is not sufficient."  The document (Dkt. 55) should remain under seal.  Western Dist. Washington Local Rule ("Local Rule") 5(g)(3)(B).

The Plaintiffs also filed certain pleadings under seal in support of their motion.  Dkts. 44-1.  These pleadings included a copy of the search warrant (Dkt. 41-1 at 4-21)(which was also filed in redacted form at Dkt. 47), the Vancouver Police Department's Operational Plan (Dkt. 44-1 at 24-28), personnel records (Dkt. 44-1 at 29-50), deputization records (Dkt. 44-1 at 51-66), and interview of FBI Special Agent Russell Ellersick's interview after Mr. Hunter's death (Dkt. 44-1 at 54-66).  The Plaintiffs did not file a motion to seal these pleadings as is required under Local Rule 5(g).

For purposes of this motion only, there is good cause for a portion of the documents – the search warrant and affidavit in support thereof (Dkt. 41-1 at 4-21) - to remain under seal.  That pleading contains information like phone numbers and addresses that should remain under seal.  There are "legitimate private or public interests that warrant the relief sought," that "injury may result if the pleadings do not remain under seal, and that a "less restrictive alternative" to the document remaining under seal "is not sufficient."  Due to the way they were filed (as one

document) the entire group of pleadings must be either entirely sealed or entirely unsealed.  The pleadings filed at (Dkt. 41-1) should remain under seal.  Local Rule 5(g)(3)(B).

As to the remaining documents the Plaintiffs filed at Dkt. 44-1, multiple copies have been filed in the record and not under seal.  *E.g.* Vancouver Police Department's Operational Plan (Dkt. 44-1 at 24-28), personnel records (Dkt. 44-1 at 29-50), deputization records (Dkt. 44-1 at 51-66), and interview of FBI Special Agent Russell Ellersick's interview after Mr. Hunter's death (Dkt. 44-1 at 54-66).  Citation to those documents in this order is to an unsealed version. In the future, the Plaintiffs should comply with Local Rule 5(g) if they file pleadings under seal.

### III.    ORDER

- The Plaintiffs' Motion Challenging the Attorney General's Certification and to Substitute Individual Defendants Dennis Devlin and Rob Rees Campbell for the United States (Dkt. 44) **IS DENIED;**

- The United States **SHALL** remain as a Defendant**;** and

- The documents filed at (Dkt. 44-1) **SHALL** remain filed under seal.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 29th day of August, 2022.

ROBERT J. BRYAN
United States District Judge